## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STATE AUTO PROPERTY & CASUALTY** )<br>**INSURANCE COMPANY** )<br> )<br> **PLAINTIFF,** )<br> )<br>**v.** )<br> )<br>**WARD KRAFT, INC.,** )<br>2401 Cooper Street )<br>Fort Scott, KS 66701 )<br> )<br>**ZEBRA TECHNOLOGIES CORPORATION,** )<br>3 Overlook Point )<br>Lincolnshire, IL 60069 )<br> )<br>**ZEBRA TECHNOLOGIES** )<br>**INTERNATIONAL, LLC,** )<br>3 Overlook Point )<br>Lincolnshire, IL 60069 )<br> )<br>**LASER BAND, LLC,** )<br>120 South Central, Suite 450 )<br>St. Louis, MO 63105 )<br> )<br>**ZIH CORP.** )<br>3 Overlook Point )<br>Lincolnshire, IL 60069 )<br> )<br>**and** )<br> )<br>**TYPENEX MEDICAL, LLC** )<br>303 East Wacker Drive, Suite 1040 )<br>Chicago, IL 60601 )<br> )<br> )<br> **DEFENDANTS.** ) | **CASE NO. 2:18-cv-2671** |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

COMES NOW Plaintiff State Auto Property & Casualty Insurance Company (hereinafter

"State Auto"), by and through their undersigned counsel and pursuant to 28 U.S.C. §2201, and

for its Complaint for Declaratory Judgment against Defendants Ward Kraft, Inc., Zebra Technologies Corporation, Zebra Technologies International, LLC, Laser Band, LLC, ZIH Corp. and Typenex Medical, LLC, hereby states and alleges as follows:

**Parties, Jurisdiction, and Venue**

1.      State Auto is an insurance company organized and existing under the laws of the state of Ohio, with its principal place of business in the state of Ohio and, for purposes of diversity jurisdiction, State Auto is a citizen of Ohio.

2.      State Auto is authorized to conduct insurance business in Kansas by the Kansas Insurance Department.

3.      Upon information and belief, Defendant Ward Kraft, Inc. ("Ward Kraft") is a corporation organized and existing under the laws of the state of Kansas, with its principal place of business in Kansas and, for purposes of diversity jurisdiction, Ward Kraft is a citizen of Kansas. Ward Kraft may be served with process at 2401 Cooper Street, Fort Scott, Kansas 66701.

4.      Upon information and belief, Defendant Zebra Technologies Corporation ("ZTC") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Illinois and, for purposes of diversity jurisdiction, ZTC is a citizen of Delaware and Illinois. ZTC may be served with process at 3 Overlook Point, Lincolnshire, Illinois 60069.

5.      Upon information and belief, Defendant Zebra Technologies International ("ZTI") is a corporation organized and existing under the laws of the state of Illinois, with its

principal place of business in Illinois and, for purposes of diversity jurisdiction, ZTI is a citizen of Illinois. ZTI may be served with process at 3 Overlook Point, Lincolnshire, Illinois 60069.

6.     Upon information and belief, Defendant Laser Band, LLC ("Laser Band") is a limited liability company organized under the laws of the state of Missouri, with its principal place of business in Missouri and, for purposes of diversity jurisdiction, Laser Band is a citizen of Missouri. Laser Band may be served with process at 120 South Central, Suite 450, St. Louis, Missouri 63105.

7.     Upon information and belief, Defendant ZIH Corp. ("ZIH") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Illinois and, for purposes of diversity jurisdiction, ZIH is a citizen of Delaware and Illinois. ZIH may be served with process at 3 Overlook Point, Lincolnshire, Illinois 60069.

8.     Upon information and belief, Defendant Typenex Medical, LLC ("Typenex") is a limited liability company organized and existing under the laws of the state of Illinois, with its principal place of business in Illinois and, for purposes of diversity jurisdiction, Typenex is a citizen of Illinois. Typenex may be served with process at 303 East Wacker Drive, Suite 1040, Chicago, Illinois 60601.

9.     On or about July 9, 2018, Defendants ZTC, and its wholly-owned subsidiaries, ZTI, Laser Band and ZIH, filed an action in the United States District Court for the Northern District of Illinois styled *Zebra Technologies Corporation, Zebra Technologies International, LLC, Laser Band, LLC and ZIH Corp., Plaintiffs v. Typenex Medical, LLC and Ward Kraft, Inc., Defendants,* Case No. 1:18-cv-04711 (the "Underlying Lawsuit"), wherein Defendants ZTC, ZTI, Laser Band and ZIH seek a determination of liability and damages against Ward Kraft and

3

Typenex. (Defendants ZTC, ZTI, Laser Band and ZIH are hereafter referred to collectively as "Zebra").

10.     Defendant Ward Kraft has tendered the Underlying Lawsuit to State Auto for defense and liability coverage under an insurance policy issued by State Auto to Defendant Ward Kraft.

11.     Plaintiff State Auto is currently providing a defense to Defendant Ward Kraft under a full reservation of rights.

12.     Defendants are subject to personal jurisdiction in this District, and are subject to the Court's specific and general jurisdiction, pursuant to due process, on the grounds that they either reside in the state of Kansas, regularly conduct or solicit business in the state of Kansas, engage in other persistent courses of conduct, and/or derive substantial revenue from the sale of goods and services to persons or entities in the state of Kansas.

13.     The United States District Court for the District of Kansas maintains jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 exclusive of interests and costs, and the action is between citizens of different states.

14.     The United States District Court for the District of Kansas maintains jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 2201(a), because this Complaint for Declaratory Judgment seeks the judicial declaration of the rights, statuses, and legal relations of and among the parties with regard to contracts of insurance and because an actual case or controversy of a justiciable nature exists among the parties.

4

15.     Venue is proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of events giving rise to this dispute occurred in said judicial district.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3).

16.     Venue is proper in the Kansas City Division of the United States District Court for the District of Kansas.

**Zebra's Allegations in the Underlying Lawsuit**

**Zebra's Patents-in-Suit**

17.     Zebra alleges that Laser Band is the lawful owner of eight (8) separate United States Patents issued between March 2006 and September 2011 on various types of patient identification wristbands. (Complaint ¶'s 13-20).

**Zebra's Business and Trademark and Trade Dress Rights**

18.     Zebra alleges that since 1999, Laser Band has designed, manufactured, and sold business forms that incorporate self-laminating, laser-printable patient identification wristbands ("LASER BAND Products"). (Complaint ¶ 21).

19.     Zebra alleges it acquired Laser Band in 2012, including Laser Band's trademark and dress rights, and the goodwill associated with such marks and trade dress. (Complaint ¶ 21).

20.     Zebra alleges it has sold and/or continues to sell LASER BAND Products to hospitals and/or medical professionals throughout the United States. (Complaint ¶ 23).

21.     Zebra alleges that over the years, it has created and used numerous trademarks and trade dress configurations to serve as source identifiers for Zebra and to distinguish the LASER BAND Products from competitors' products. (Complaint ¶ 24).

22.     Zebra alleges ZIH owns three (3) U.S. trademark registrations for LASER BAND, as well as common law rights to LASER BAND in connection with business forms that incorporate self-laminating, laser printable patient identification wristbands (collectively, "LASER BAND Marks"). (Complaint ¶'s 22 and 25-26).

23.     Zebra alleges that by virtue of their continuous use in commerce since as early as 2006, Zebra owns common law trademark rights in L2 and L3 ("L2 and L3 Marks") in connection with business forms that incorporate self-laminating, laser-printable patient identification wristbands. (Complaint ¶ 27).

24.     Zebra alleges the L2 and L3 Marks are unique in the patient identification wristband industry and the L2 and L3 Marks are not functional. (Complaint ¶'s 29-30).

25.     Zebra alleges that given its continuous use of the L2 and L3 Marks over the last 12 years, the L2 and L3 Marks have acquired distinctiveness in the minds of consumers and serve as a source identifier for Zebra and LASER BAND Products. (Complaint ¶ 31).

## Zebra's Color Blue Trade Dress

26.     Zebra alleges that by virtue of their continuous use in commerce since as early as 2002, Zebra owns common law trade dress rights in the color blue ("Color Blue Trade Dress") in connection with business forms that incorporate self-laminating, laser-printable patient identification wristband. (Complaint ¶ 33).

27.     Zebra alleges the representative elements of Zebra's Color Blue Trade Dress include: the color blue applied to business forms that identify the brand and/or model of the patient identification wristbands and show the placement of patient identification wristbands and/or labels. (Complaint ¶ 33).

6

28.     Zebra alleges the Color Blue Trade Dress is unique in the patient identification wristband industry and the Color Blue Trade Dress is not functional (Complaint ¶'s 35-36).

29.     Zebra alleges that given Zebra's continuous use of the Color Blue Trade Dress, including by and through Laser Band over the last 16 years, the Color Blue Trade Dress has acquired distinctiveness in the minds of consumers and serves as a source identifier for Zebra and LASER BAND Products. (Complaint ¶ 37).

### Zebra's Configuration Trade Dress

30.     Zebra alleges that by virtue of their continuous use in commerce since as early as 2006, Zebra owns common law trade dress rights in the design, look and feel, and overall commercial impression of their business forms that incorporate self-laminating, laser-printable identification wristbands that Zebra markets under trademarks L3 ("L3 Trade Dress"), L2 ("L2 Trade Dress"), and 102W3 ("102W3 Trade Dress") (collectively, "Configuration Trade Dress"). (Complaint ¶ 38).

31.     Zebra alleges the representative elements of the L3 Trade Dress, the L2 Trade Dress and the 102W3 Trade Dress include: a three-dimensional configuration of a wristband as part of a configuration of a business form. (Complaint ¶'s 39-41).

32.     Zebra alleges the Configuration Trade Dress is unique in the patient identification wristband industry and the Configuration Trade Dress is not functional (Complaint ¶'s 42-43).

33.     Zebra alleges its advertisements do not tout any utilitarian advantages of the Configuration Trade Dress; alternative designs are available that serve the same utilitarian purpose as the Configuration Trade Dress; the Configuration Trade Dress does not result from a

7

comparatively simple or inexpensive manufacturing method; and the Configuration Trade Dress is not disclosed in patents. (Complaint ¶'s 44-47).

34.     Zebra alleges that given its continuous use of the Configuration Trade Dress over the last 12 years, the Configuration Trade Dress has acquired distinctiveness in the minds of consumers and serves as a source identifier for Zebra and LASER BAND Products. (Complaint ¶'s 38-48).

**Zebra's Advertising, Revenues and Associated Goodwill**

35.     Zebra alleges it has expended substantial monies in marketing, advertising and promoting the LASER BAND Marks, L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress, and, through such marketing, advertising and the sale of LASER BAND Products, has generated substantial goodwill and customer recognition in the LASER BAND Marks, the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress. (Complaint ¶ 49).

36.     Zebra alleges it uses the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress to advertise the LASER BAND Products, and it has derived substantial revenues from its sale of products under the LASER BAND Marks, the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress. (Complaint ¶'s 50-51).

37.     Zebra alleges that as a result of the continuous and extensive marketing and sales of the LASER BAND Products under the LASER BAND Marks, the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress, the LASER BAND Products have come to be, and now are, well and favorably known under the LASER BAND Marks, the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress. (Complaint ¶ 52).

38.     Zebra alleges it has built valuable goodwill in connection with the LASER BAND Marks, the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress; such goodwill has been built up long before Ward Kraft and Typenex misappropriated the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress, or colorable imitations thereof, in connection with their manufacture, marketing and/or sales of Ward Kraft and Typenex's products. (Complaint ¶ 52).

39.     Zebra alleges its rights under the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress are entitled to protection from unfair competition, infringement and injury to the marks and the goodwill represented by such marks. (Complaint ¶ 53).

## Ward Kraft and Typenex's Alleged Unlawful Acts

## Typenex's Alleged Infringement of Zebra's Patents

40.     Zebra alleges Typenex makes, uses, offers to sell, sells and/or imports business forms that incorporate self-laminating, laser-printable patient identification wristbands that infringe Zebra's Patents. (Complaint ¶'s 54-60).

## Ward Kraft and Typenex's Alleged Infringement of Zebra's Trademarks and Trade Dress in Violation of Section 43(a) of the Lanham Act, Common Law Unfair Competition, and Illinois Uniform Deceptive Trade Practices Act

41.     Zebra alleges Ward Kraft manufactures and sells six (6) different business forms that incorporate self-laminating, laser-printable patient identification wristbands, which Typenex markets and sells (the "Typenex Products") and Ward Kraft markets and sells business forms that incorporate self-laminating, laser-printable patient identification wristbands under the PolyBand mark (the "PolyBand products"). (Complaint ¶ 61).

9

42.     Zebra alleges Ward Kraft sells and/or offers for sale the Typenex Products and the PolyBand products to distributors, hospitals, and/or medical professionals. (Complaint ¶ 62).

43.     Zebra alleges the Typenex Products and the PolyBand Products are identical or nearly identical to the LASER BAND Products. (Complaint ¶ 63).

44.     Zebra alleges Ward Kraft markets its products to the same customers to which Zebra markets the LASER BAND Products. (Complaint ¶ 64).

45.     Zebra alleges it has used the L2 and L3 Marks, the Color Blue Trade Dress, and/or the Configuration Trade Dress since long before Ward Kraft adopted and began using the L2 and L3 Marks, the Color Blue Trade Dress, and/or the Configuration Trade Dress on their products. (Complaint ¶ 65).

### Ward Kraft and Typenex's Alleged Use of Zebra's L2 and L3 Marks

46.     Zebra alleges Ward Kraft and Typenex incorporate the L2 and L3 Marks into three of the Typenex Products. (Complaint ¶ 66).

47.     Zebra alleges Typenex uses the L2 and L3 Marks prominently on its website. (Complaint ¶ 67).

48.     Zebra's Complaint includes representative examples of Ward Kraft and Typenex's use of the L2 and L3 Marks. (Complaint ¶ 68).

### Ward Kraft and Typenex's Alleged Use of Zebra's Color Blue Trade Dress

49.     Zebra alleges Ward Kraft uses the Color Blue Trade Dress in connection with the promotion and sale of its products. (Complaint ¶ 69).

50.     Zebra alleges Ward Kraft manufactures, markets, and sells business forms that incorporate self-laminating, laser-printable patient identification wristbands that use the Color Blue Trade Dress ("PolyBand 3 Product"). (Complaint ¶ 71).

**Ward Kraft and Typenex's Alleged Use of Zebra's Configuration Trade Dress**

51.     Zebra alleges three (3) of the products manufactured by Ward Kraft and promoted and sold by Typenex, copy the L3 Trade Dress, L2 Trade Dress and 102W3 Trade Dress. (Complaint ¶ 73).

52.     Zebra alleges Ward Kraft's PolyBand 3 Product copies the L3 Trade Dress. (Complaint ¶ 74).

**Ward Kraft and Typenex's Alleged Willful Infringement and Customer Confusion**

53.     Zebra alleges Ward Kraft chose to use the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress in connection with its products to trade on Zebra's established goodwill in the relevant market. (Complaint ¶ 76).

54.     Zebra alleges that as a result of Ward Kraft's infringing conduct, actual incidents of confusion have occurred on multiple occasions. (Complaint ¶ 77).

55.     Zebra alleges the aforesaid acts by Ward Kraft are causing and are likely to continue to cause the purchasing public to believe that Ward Kraft's products are Zebra's products or are somehow connected or affiliated with Zebra, or that Ward Kraft's products are authorized, sponsored or approved by Zebra such that Ward Kraft's products are subject to the same high quality standards as the LASER BAND Products. (Complaint ¶ 78).

56.     Zebra alleges it has not authorized Ward Kraft to use the L2 and L3 Marks, the Color Blue Trade Dress or the Configuration Trade Dress. (Complaint ¶ 79).

11

57.     Zebra alleges that on April 14, 2018, it sent Typenex a cease and desist letter and, on May 3, 2018, counsel for Ward Kraft responded to Zebra's cease and desist letter, admitting to manufacturing the infringing Typenex Products. Zebra alleges that on May 10, 2018, Zebra responded by letter rejecting Ward Kraft and Typenex's authorization to use the LASER BAND Marks, the L2 and L3 Marks, the Color Blue Trade Dress and/or the Configuration Trade Dress. Zebra alleges that to date, Defendants continue to infringe on Zebra's Marks, Trade Dress and Configuration Trade Dress. (Complaint ¶ 80).

**Ward Kraft's Alleged Misleading Statements of Fact in Violation of the Lanham Act**

58.     Zebra's Complaint includes a representative example of Ward Kraft's advertising materials (the "Ward Kraft Advertisement") which Ward Kraft distributes to the same customers to which Zebra markets the LASER BAND Products. (Complaint ¶ 82).

59.     Zebra alleges Ward Kraft did not invent, design, patent, or create the LASER BAND Products. (Complaint ¶ 83).

60.     Zebra alleges Ward Kraft is not authorized to use the LASER BAND Marks in connection with the sale, offering for sale, distribution or advertising of Ward Kraft's Products. (Complaint ¶ 84).

61.     Zebra alleges Ward Kraft's Advertisement does not disclose that Ward Kraft had manufactured LASER BAND Products for Zebra under a now expired license by Zebra. (Complaint ¶ 85).

62.     Zebra alleges Ward Kraft's use of LASER BAND Marks in commerce to advertise Ward Kraft products is likely to confuse consumers into mistakenly believing that

12

Ward Kraft is sponsored or affiliated with Zebra, Laser Band and/or LASER BAND Products. (Complaint ¶ 86).

63.     Zebra alleges Ward Kraft's statement in the Ward Kraft Advertisement that Ward Kraft is the "original manufacturer of LaserBand®" is a misleading representation of fact because it is likely to confuse consumers into mistakenly believing that Ward Kraft invented, designed, patented, sold, or was the creator of the LASER BAND Products and/or is the "original manufacturer" of all LASER BAND Products. (Complaint ¶ 87).

64.     Zebra alleges Ward Kraft's statement in the Ward Kraft Advertisement that "We are the experts in Patient ID Wristbands" in proximity to its claim that it is the "original manufacturer of LaserBand®" is material in that it misrepresents the nature, characteristics, and qualities of Ward Kraft's products because consumers will mistakenly believe that Ward Kraft developed its alleged expertise as a result of its inventing, designing, patenting, selling, or creating the LASER BAND Products. (Complaint ¶ 88).

65.     Zebra alleges the statements in the Ward Kraft Advertisement are material because they are likely to influence the buyer's decision-making process and are likely to divert sales from Zebra to Ward Kraft. (Complaint ¶ 89).

66.     Zebra's Complaint includes a representative example of Ward Kraft's product guide (the "Ward Kraft Product Guide") which it distributes to the same customers to which Zebra markets and distributes the LASER BAND Products. (Complaint ¶ 82).

67.     Zebra alleges the Ward Kraft Product Guide does not disclose that ZIH owns the LASER BAND Marks. (Complaint ¶ 91).

13

68.     Zebra alleges that Ward Kraft's inclusion of the statements "[w]ork as an alternative to the L2 Bands!", "[l]ines up with competitive bands in the market", and "[n]o need for customers to buy special laser printers or special trays" establish that Ward Kraft's products, including but not limited to the PolyBand 2 Product, are direct copies of the Configuration Trade Dress. (Complaint ¶ 92).

69.     Zebra alleges Ward Kraft's statements in the Ward Kraft Product Guide are misleading because they are likely to confuse consumers into mistakenly believing that Ward Kraft is the source of LASER BAND Products or that Ward Kraft's products are authorized, sponsored or approved by Zebra. (Complaint ¶ 93).

70.     Zebra alleges the statements in Ward Kraft's Product Guide are material because they are likely to influence the buyer's decision-making process and are likely to divert sales from Zebra to Ward Kraft. (Complaint ¶ 94).

## Zebra's Claims Against Defendants

### Patent Infringement

71.     Counts I through VIII of Zebra's Complaint allege Typenex infringed each of Zebra's eight (8) patents. (Complaint ¶'s 96-134).

### Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

72.     Zebra alleges it owns the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress, and such marks and trade dress have become associated with Zebra; and Zebra did not authorize Ward Kraft to use the L2 and L3 Marks, the Color Blue Trade Dress or the Configuration Trade Dress. (Complaint ¶'s 136-137).

14

73.     Zebra alleges Ward Kraft has made, used, exported, imported, marketed, sold and/or offered for sale products, including but not limited to the Helix AC Laser (Adult), Helix AC Laser L2 (Adult), Helix AC Laser L2 (Pediatric/Infant), Helix AC Laser L3 (Adult), FamBand Helix Laser AC, and FamBand Laser products, that infringe Zebra's L2 and L3 Marks, the Color Blue Trade Dress and Configuration Trade Dress. (Complaint ¶ 138).

74.     Zebra alleges Ward Kraft has made, used, exported, imported, marketed, sold and/or offered for sale products, including but not limited to the PolyBand 3 Product that infringe the Color Blue Trade Dress and Configuration Trade Dress. (Complaint ¶ 139).

75.     Zebra alleges Ward Kraft's use of the L2 and L3 Marks, the Color Blue Trade Dress and Configuration Trade Dress has caused and is likely to continue to cause confusion or mistake, or to deceive customers into falsely believing that Defendants are approved by, sponsored by, endorsed by, or otherwise affiliated with Zebra, in violation of 15 U.S.C. § 1125. (Complaint ¶ 140).

76.     Zebra alleges past, present and future manufacture, use, distribution, sale and/or offer for sale by Ward Kraft of products using the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress, constitutes false designation of origin, unfair competition, and trade dress infringement in violation of 15 U.S.C. § 1125. (Complaint ¶ 141).

77.     Zebra alleges Ward Kraft has been aware of the LASER BAND Products, including Zebra's use of the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress, making Defendants' infringement willful and deliberate. (Complaint ¶ 142).

### **Common Law Unfair Competition**

78.     Zebra alleges Ward Kraft's willful, intentional and illegal acts have interfered and will interfere with Zebra's ability to conduct its business, and constitutes unfair competition at common law. (Complaint ¶ 145).

79.     Zebra alleges that as a result of Ward Kraft's willful, intentional and illegal acts, Zebra has suffered commercial damages for which it may recover. (Complaint ¶ 146).

## Deceptive Trade Practices Pursuant to 815 ILCS §§ 510/1

80.     Zebra alleges Ward Kraft has knowingly and willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act by causing likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties respective products or services; causing likelihood of confusion or of misunderstanding as to the affiliation, connection or association of Ward Kraft's products with Zebra's LASER BAND Products; and using deceptive representations or designations of origin in connection with Defendants' Products. (Complaint ¶ 148).

81.     Zebra alleges the unauthorized use by Ward Kraft of the L2 and L3 Marks, the Color Blue Trade Dress, and the Configuration Trade Dress is causing and is likely to cause substantial injury to the public and to Zebra, and Zebra has no adequate remedy at law for this injury. (Complaint ¶ 149).

## Ward Kraft's Misleading Statement of Fact (15 U.S.C. § 1125(a))

82.     Zebra alleges ZIH owns the LASER BAND Marks and the marks have become associated with Zebra; Ward Kraft is not authorized to use the LASER BAND Marks; and Ward Kraft uses LASER BAND Marks in commerce to advertise Ward Kraft's products. (Complaint ¶'s 151-153).

83.     Zebra alleges Ward Kraft's statement that it is the "original manufacturer of LaserBand®" is a misleading representation of fact. (Complaint ¶ 154).

84.     Zebra alleges Ward Kraft's statement that "We are the experts in Patient ID Wristbands" in proximity to its claim that it is the "original manufacturer of LaserBand®" misrepresents the nature, characteristics, and qualities of Ward Kraft's products. (Complaint ¶ 155).

85.     Zebra alleges Ward Kraft's use of LASER BRAND Marks, its misleading representation of fact, and its misrepresentation of the nature, characteristics, and qualities of Ward Kraft's products, has caused and is likely to continue to cause confusion or mistake, or to deceive customers into falsely believing that Ward Kraft is approved by, sponsored by, endorsed by, or otherwise affiliated with Zebra, or that Ward Kraft invented, designed, patented, sold or was the creator of the LASER BAND Products, in violation of 15 U.S.C. § 1125. (Complaint ¶ 156).

86.     Zebra alleges Ward Kraft has been aware of the LASER BAND Products and LASER BAND Marks, making its infringement willful and deliberate; and the statements in the Ward Kraft Advertisement and the Ward Kraft Product Guide are material because they are likely to influence the buyer's decision-making process and are likely to divert sales from Zebra to Ward Kraft. (Complaint ¶ 157).

## The State Auto Insurance Policies

87.     State Auto issued to Ward Kraft a Preferred Business Policy, policy number PBP 2788154 00, effective April 14, 2017 to April 14, 2018 (the "Policy").

88.     The Policy was renewed effective April 14, 2018 to April 14, 2019.

17

89.     The Policy includes a Commercial General Liability Coverage Form which includes the following particularly pertinent terms and conditions:

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

    b.  This insurance applies to "bodily injury" and "property damage" only if:
        (1) The "bodily injury" or "property damage" is caused by an occurrence that takes place in the "coverage territory";
        (2) The "bodily injury" or "property damage" occurs during the policy period; and
            …

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1.      **Insuring Agreement**

        a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  …

        b.      This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2.      **Exclusions**

        This insurance does not apply to:

        **a. Knowing Violation of Rights of Another**

18

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**
"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Policy Period**
"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

…

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**
"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement." However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

…

**l. Unauthorized Use of Another's Name or Product**
"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

## SECTION V – DEFINITIONS

1.   "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and
b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

…

3.      "Bodily Injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and advertising injury" means injury, including consequential bodily injury", arising out of one or more of the following offenses:
        …

        f. The use of another's advertising idea in your "advertisement"; or

        g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

…

17.     "Property damage" means:
        a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
        b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
        …

90.     The Policy includes a Commercial Umbrella Coverage Form (CG001 (4/13) which

includes the following particularly pertinent terms and conditions:

**Section I – Insuring Agreements**

In consideration of the payment of premium and in reliance upon representations you made to us during the process of obtaining this insurance and subject to the Limit of Insurance shown in the Declarations, and all the exclusions, terms and conditions of this policy, we agree as follows:

**Coverage A – Bodily Injury And Property Damage Liability**

**1. Insuring Agreement**
        a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. …

However, we will have no duty to defend the insured against any "suits" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply; …

**Coverage B – Personal And Advertising Injury Liability**

**1.**      **Insuring Agreement**
a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies.

…

However, we will have no duty to defend the insured against any "suits" seeking damages for "personal and advertising injury" to which this insurance does not apply; …

**2.**      **Exclusions**
This insurance does not apply to:

a. "Personal and advertising injury"

**(1) Knowing Violation of Rights of Another**
Caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

**(2) Material Published With Knowledge of Falsity**
Arising out of the oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity;

**(3) Material Published Prior To Policy Period**
Arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period;

…

**(9) Infringement of Copyright, Patent Trademark Or Trade Secret**
Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

21

…

**(12) Unauthorized Use Of Another's Name or Product**
Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

91.     The Definitions of "Advertisement," "Bodily Injury," "Occurrence," "Personal and advertising injury" and "Property Damage" in the Commercial Umbrella Coverage Form are identical to the Definitions of "Advertisement" and "Personal and advertising injury" in the Commercial General Liability Coverage Form.

## COUNT I

### DECLARATORY JUDGMENT
### (Personal and Advertising Injury)

92.     State Auto incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 91 of this Complaint for Declaratory Judgment.

93.     The Policy provides that State Auto will pay those sums that Ward Kraft becomes legally obligated to pay because of personal and advertising injury to which this insurance applies; and, State Auto will have the right and duty to defend Ward Kraft against any suit seeking those damages.

94.     The Policy provides that State Auto will have no duty to defend Ward Kraft against any suit seeking damages for personal and advertising injury to which this insurance does not apply.

95.     "Personal and advertising injury" is defined in the Policy as injury arising out of one or more of the offenses listed in the Policy, including but not limited to, the use of another's

advertising idea in the insured's advertisement, or infringing upon another's copyright, trade dress or slogan in the insured's advertisement.

96.     The Policy only provides coverage for infringement of another's copyright, trade dress or slogan that occurs in the insured's advertisement and the Policy does not provide coverage for infringement of another's copyright, trade dress or slogan that occurs somewhere other than the insured's advertisement.

97.     The Complaint in the Underlying Action does not allege injury arising out of any of the offenses contained in the definition of "personal and advertising injury" in the Policy.

98.     The Policy does not provide coverage for Ward Kraft's manufacture, use, distribution, sale or offer for sale of products that allegedly infringe Zebra's L2 and L3 Marks, the Color Blue Trade Dress or the Configuration Trade Dress.

99.     Ward Kraft's alleged infringement of Zebra's L2 and L3 Marks, the Color Blue Trade Dress or the Configuration Trade Dress did not occur or arise out of an "advertisement" as defined in the Policy.

100.    The Complaint in the Underlying Action does not allege any causal connection between an "advertisement" and an "advertising injury."

101.    The Complaint in the Underlying Action does not allege that Ward Kraft's advertisements have caused harm to Zebra.

102.    To the extent Zebra's Complaint in the Underlying Lawsuit seeks damages for injuries that do not arise out of or are unrelated to Ward Kraft's advertisement of its products, such damages do not fall within the definition of personal and advertising injury in the Policy and there is no coverage for such damages.

23

103.    The Policy excludes coverage for personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

104.    To the extent Zebra's Complaint in the Underlying Lawsuit seeks damages for injuries arising out of Ward Kraft's alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights, such damages are excluded from coverage under the Policy.

105.    The Policy excludes coverage for personal and advertising injury caused by or at the direction of Ward Kraft with knowledge that the act would violate the rights of another and would inflict personal and advertising injury.

106.    The Policy excludes coverage for personal and advertising injury arising out of publication of material, if done by or at the direction of Ward Kraft with knowledge of its falsity.

107.    Zebra's claim of Unfair Competition and False Designation of Origin (Count IX) alleges Ward Kraft has made, used, exported, marketed, sold and/or offered for sale products that infringe upon Zebra's trademarks and trade dress; and Ward Kraft's infringement has been willful and deliberate. (Complaint ¶'s 135-143).

108.    Zebra's claim of Common Law Unfair Competition (Count X) alleges Ward Kraft's willful, intentional and illegal acts have interfered and will interfere with Zebra's ability to conduct its business, and constitutes unfair competition at common law; and, Zebra has suffered damages as a result of Ward Kraft's willful, intentional and illegal acts. (Complaint ¶'s 144-146).

109.    Zebra's claim of Deceptive Trade Practices Pursuant to ILCS §§ 501/1 et seq. (Count XI) alleges Ward Kraft knowingly and willfully engaged in deceptive trade practices. (Complaint ¶'s 147-149).

110.    Zebra's claim of Misleading Statement of Fact (Count XII) alleges Ward Kraft has been aware of the LASER BAND Products and LASER BAND Marks, making its infringement willful and deliberate. (Complaint ¶'s 150-158).

111.    No coverage exists under the Policy for Zebra's claims against Ward Kraft because the Policy excludes coverage for injury caused by or at the direction of Ward Kraft with knowledge that the act would violate the rights of another and would inflict injury.

112.    No coverage exists under the Policy for Zebra's claims against Ward Kraft because the Policy excludes coverage for publication of material done by or at the direction of Ward Kraft with knowledge of its falsity.

113.    Zebra alleges that on April 24, 2018, Zebra sent Typenex a cease and desist letter and on May 3, 2018, counsel for Ward Kraft responded to Zebra's cease and desist letter. (Complaint ¶ 80).

114.    Upon information and belief, Ward Kraft first published the alleged infringing advertisement and product guide prior to the beginning of the policy period.

115.    No coverage exists under the Policy for Zebra's claims against Ward Kraft because the Policy excludes coverage for injury arising out of publication of material  whose first publication took place before the beginning of the policy period.

116.    No coverage exists under the Policy because the alleged infringement of Zebra's L2 and L3 Marks, the Color Blue Trade Dress or the Configuration Trade Dress, and/or the

advertisements depicting the alleged infringing products, were published prior to the beginning of the policy period, and any later publications were identical or substantially similar to the prior advertisements.

117.     To the extent Zebra's Complaint in the Underlying Lawsuit alleges damages for injuries that arose prior to the inception of the Policy, the Complaint in the Underlying Lawsuit seeks damages occurring outside the effective dates of any State Auto policy of insurance issued to Ward Kraft.

118.     The allegations against Ward Kraft in Zebra's Complaint in the Underlying Lawsuit, regardless of the labels ascribed to the various counts in the Complaint, allege conduct and resulting damages that are outside the scope of coverage provided by the liability insuring agreement for Coverage B – Personal and Advertising Injury contained in the Policy.

119.     State Auto has no duty to defend Ward Kraft in the Underlying Lawsuit because the Complaint in the Underlying Lawsuit does not state allegations which meet the requirements of the liability insuring agreement for Coverage B – Personal and Advertising Injury contained in the Policy.

**WHEREFORE**, State Auto Property & Casualty Insurance Company respectfully prays that the Court: (i) enter judgment in favor of State Auto and against all Defendants on Count I of this Complaint for Declaratory Judgment; (ii) declare that State Auto does not owe and has never owed Ward Kraft a duty to defend it against the claims asserted by Zebra against Ward Kraft in the Complaint in the Underlying Lawsuit; (iii) declare that State Auto does not owe Ward Kraft a duty to indemnify it for the claims asserted by Zebra against Ward Kraft in the Complaint in the Underlying Lawsuit or for any judgment that may be entered on any such claims; and (iv) grant

26

to State Auto such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II

### DECLARATORY JUDGMENT
### (Bodily Injury and Property Damage)

120.   State Auto incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 119 of this Complaint for Declaratory Judgment.

121.   The Policy provides that State Auto will pay those sums that Ward Kraft becomes legally obligated to pay because of bodily injury or property damage to which this insurance applies; and, State Auto will have the right and duty to defend Ward Kraft against any suit seeking those damages.

122.   The Policy provides that State Auto will have no duty to defend Ward Kraft against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.

123.   The Policy provides that this insurance only applies to bodily injury and property damage if the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory during the policy period.

124.   "Bodily injury" is defined in the Policy as bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

125.   "Occurrence" is defined in the Policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

126.    "Property damage" is defined in the Policy as physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured.

127.    Zebra's Complaint in the Underlying Lawsuit does not allege that Zebra sustained bodily injury or property damage caused by an occurrence.

128.    The allegations against Ward Kraft in Zebra's Complaint in the Underlying Lawsuit, regardless of the labels ascribed to the various counts in the Complaint, allege conduct and resulting damages that are outside the scope of coverage provided by the liability insuring agreement for Coverage A – Bodily Injury and Property Damage Liability contained in the Policy.

129.    State Auto has no duty to defend Ward Kraft in the Underlying Lawsuit because the Complaint in the Underlying Lawsuit does not state allegations which meet the requirements of the liability insuring agreement for Coverage A – Bodily Injury and Property Damage Liability contained in the Policy.

**WHEREFORE**, State Auto Property & Casualty Insurance Company respectfully prays that the Court: (i) enter judgment in favor of State Auto and against all Defendants on Count II of this Complaint for Declaratory Judgment; (ii) declare that State Auto does not owe and has never owed Ward Kraft a duty to defend it against the claims asserted by Zebra against Ward Kraft in the Complaint in the Underlying Lawsuit; (iii) declare that State Auto does not owe Ward Kraft a duty to indemnify it for the claims asserted by Zebra against Ward Kraft in the Complaint in the Underlying Lawsuit or for any judgment that may be entered on any such claims; and (iv) grant

to State Auto such other and further relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

FOLAND, WICKENS, ROPER, HOFER AND CRAWFORD, P.C.

*/s/ Scott D. Hofer*

SCOTT D. HOFER                                                    #15787
WILLIAM F. LOGAN                                               #16349
1200 Main Street, Suite 2200
Kansas City, Missouri 64105
Telephone:  (816) 472-7474
Facsimile:  (816) 472-6262
Email:  shofer@fwpclaw.com
Email:  llogan@fwpclaw.com
***ATTORNEYS FOR PLAINTIFF STATE AUTO PROPERTY & CASUALTY INSURANCE COMPANY***

29